The Full Commission has again reviewed this matter based upon the record of the proceedings before Deputy Commissioner Lorrie L. Dollar and pursuant to the decision filed by the Court of Appeals on 21 April 1997. Upon review of the evidence of record with reference to the errors assigned, the Full Commission modifies its prior Opinion and Award to find that defendants rebutted the presumption of continued disability and that plaintiff then failed to otherwise prove he was entitled to continuing total disability. The following Opinion and Award supercedes and replaces the Opinion and Award filed 13 September 1995.
***********
The Full Commission find as facts and conclude as matters of law the following, which were entered into by the parties in an Industrial Commission Form 21 Agreement for Compensation, approved by the Commission on 22 February 1991, and otherwise as:
 STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act and the employment relationship existed at all relevant times.
2. Plaintiff sustained an admittedly compensable injury on 20 September 1990.
3. Plaintiff's average weekly wage was $319.41, which yielded a compensation rate of $212.95.
4. The issue for determination is whether plaintiff is entitled to additional workers' compensation benefits.
***********
Based upon all the competent, credible evidence adduced from the record, the Full Commission make the following:
 FINDINGS OF FACT
1. On 20 September 1990, plaintiff was a 56 year old male with a tenth grade education, who was employed as a delivery driver and installer with defendant-employer. Plaintiff had previous experience in farming, laundry service, carpentry, and general construction.
2. On 20 September 1990, plaintiff sustained an admittedly compensable injury by accident when he fell from a ladder while installing a gas line on the second floor of a residential customer's house.
3. Defendants admitted the compensability of and accepted liability for plaintiff's 20 September 1990 injury through an Industrial Commission Form 21 Agreement for Compensation, which was approved by the Commission on 22 February 1991.
4. As a result of his 20 September 1990 injury by accident, plaintiff sustained injuries to his legs, head and elbows. Plaintiff subsequently developed deep venous thrombosis, a blood clot, in a vein of his lower left leg for which he was hospitalized for several weeks. After being discharged, plaintiff developed a secondary infection and returned to the hospital for additional treatment. Plaintiff was treated by Dr. H. D. Mabe, Jr., and subsequently by Dr. Joe Archie, Dr. Ronald Reibel and Dr. Willy Chu.
5. On 12 August 1991, Dr. Reibel, an orthopedist, opined that plaintiff did not require any additional surgery for his left leg. Dr. Reibel further opined that although plaintiff could not return to his former position as an installer with defendant-employer, that he was capable of performing light duty work as of 12 August 1991.
6. Dr. Mabe, who was plaintiff's primary treating physician, opined in August of 1991 that plaintiff was capable of sedentary or light duty work.
7. On 2 October 1991, plaintiff underwent a functional capacity evaluation at Village Therapy Center, which indicated he was capable of medium work, lifting 45 pounds and pushing or pulling 86 to 87 pounds.
8. On 25 February 1992 plaintiff underwent an Independent Medical Examination performed by Dr. Zane Walsh. Dr. Walsh evaluated plaintiff and found that plaintiff had a ten percent (10%) permanent partial disability of the lower extremity. Furthermore, Dr. Walsh found that plaintiff was capable of only light duty work as compared with the medium work level stated in plaintiff's functional capacity evaluation. Dr. Walsh explained that light work is defined as a maximum lifting capability of twenty five pounds with a frequent lifting capability of around fifteen pounds. Dr. Walsh opined that plaintiff was physically capable of working as a cashier, a front desk clerk, and a sewing machine operator.
9. On 11 September 1992, defendants hired vocational rehabilitation specialist Maria King to assist plaintiff with his job search. Ms. King met with plaintiff and discussed plaintiff's vocational history, medical history, present condition and physical limitations. Ms. King concluded that plaintiff was employable despite his restrictions and limitations.
10. After identifying eleven vocational alternatives for plaintiff, Ms. King located nineteen jobs over the next several months that were available in the area in which plaintiff resides. Each job opportunity was made known to plaintiff. However, plaintiff refused to consider or apply for any of these positions. In fact, plaintiff told Ms. King and reiterated at the hearing that he was not interested in pursuing any work which paid less than his former job. Because of plaintiff's failure to cooperate, vocational rehabilitation efforts ceased as of 1 March 1993.
11. Although plaintiff testified he was not able to stand or perform work due to leg pain, his testimony is specifically rebutted by videotaped surveillance which showed him raking and performing strenuous yard work. Plaintiff was also observed bending, twisting, standing and driving with no apparent problems. Therefore, plaintiff's testimony regarding his limitations due to pain are not accepted as credible as the surveillance reports and corroborating videotape clearly establish that he was capable of standing, twisting, bending and performing strenuous work for prolonged periods.
12. Since 1 March 1993, the date on which rehabilitation services were ceased due to plaintiff's refusal to cooperate, he has been capable of performing work as a cashier at Advance Auto, a sewing machine operator with M.V. Apparel, and a cashier with Hasty Mart. These jobs were available in plaintiff's locality and Dr. Walsh found these jobs to be within plaintiff's physical capacity. In addition, Ms. King had identified other vacancies and informed plaintiff of these openings. These jobs included a position as a front desk clerk at Howard Johnson Inn, cashier with Travel World, cashier with Quick Shop, dry cleaner attendant, fuel attendant, fuel worker at Saddlers BP Station, shipping clerk with Taylor Temporary, machine operator, security guard, hand packager, parts clerk, upholsterer, desk clerk at Dutch Inn, assembler at Heat Master, Inc., cashier at Servco, and bus monitor. All of these positions afforded plaintiff an opportunity to earn some wages.
13. As of 1 March 1993, plaintiff had unjustifiably refused suitable employment which had been identified and presented to him by defendant.
14. Defendant has rebutted the presumption of total disability, showing that plaintiff was employable in that suitable jobs were available that plaintiff, considering his physical and vocational limitations, was capable of performing and that these jobs would have enabled plaintiff to earn some wages. Defendants have not eliminated the possibility of disability.
15. Following defendants' rebuttal of the presumption of total disability, plaintiff has failed to produce credible evidence that he continues to be totally disabled given that suitable jobs were available to him and that plaintiff failed to make any reasonable effort to secure employment located by defendants.
16. Following his 20 September 1990 injury by accident, plaintiff did not return to work for defendant-employer or any other employer. Plaintiff reached maximum medical improvement on 25 February 1992 and was provided vocational rehabilitation services from 11 September 1992 to 1 March 1993. Because of his unjustified refusal of suitable employment, plaintiff was not totally disabled after 1 March 1993 and has retained the capacity to earn some wages since that date.
17. As the result of his 20 September 1990 injury by accident, plaintiff retains a ten percent (10%) permanent partial disability to his left leg.
***********
Based upon the foregoing findings of fact the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 20 September 1990, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. Upon execution by the parties and approval by the Commission of the Form 21 Agreement for Compensation, plaintiff met his initial burden of proving a disability. N.C. Gen. Stat. § 97-2(6); Brown v. S N Communications, Inc., 124 N.C. App. 320,477 S.E.2d 197 (1996). Furthermore, the Form 21 Agreement for Compensation created a rebuttable presumption of continued total disability in plaintiff's favor. N.C. Gen. Stat. § 97-29; Kisiahv. W.R. Kisiah Plumbing, 124 N.C. App. 72, 476 S.E.2d 434 (1996),disc. rev. denied, 345 N.C. 343, 483 S.E.2d 169 (1997).
3. By showing that plaintiff was employable through proving that suitable jobs were available which plaintiff, considering his physical and vocational limitations, was capable of performing and that these jobs would have enabled plaintiff to earn some wages, defendant has rebutted the presumption of total disability. Brownv. S N Communications, Inc., 124 N.C. App. 320, 477 S.E.2d (1996).
4. Alternatively, defendant has rebutted the presumption of total disability by showing that plaintiff unjustifiably refused suitable employment. Id.; N.C. Gen. Stat. § 97-32.
5. Following defendants' rebuttal of the presumption of total disability, plaintiff has failed to produce credible evidence that he continues to be totally disabled given that suitable jobs were available to him and that plaintiff failed to make any reasonable effort to secure employment located by defendants. Brown v. S N Communications, Inc.,124 N.C. App. 320, 477 S.E.2d (1996). Therefore, as the result of his 20 September 1990 injury by accident, plaintiff is entitled to temporary total disability compensation at the rate of $212.95 per week from the date of his injury through 1 March 1993, but not thereafter. N.C. Gen. Stat. § 97-29.
6. Defendants are entitled to a credit for any temporary total disability compensation paid to plaintiff after 1 March 1993. N.C. Gen. Stat. § 97-42.
7. As the result of his 20 September 1990 injury by accident, plaintiff is entitled to be paid by defendants permanent partial disability compensation at the rate of $212.95. per week for the ten percent (10%) rating to his left leg. N.C. Gen. Stat. § 97-31(15).
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee and credit approved herein, defendants shall pay to plaintiff twenty (20) weeks of permanent partial disability compensation for the ten percent (10%) rating to his left leg.
2. Defendants are entitled to a credit, calculated on a weekly basis, against the compensation awarded in paragraph (1) for any amounts of temporary total disability compensation paid to plaintiff after 1 March 1993.
3. A reasonable attorney's fee of twenty-five percent (25%) of the permanent partial disability compensation awarded herein is approved for plaintiff's counsel for services provided to the plaintiff, and as plaintiff has received an overpayment of benefits, counsel shall seek this payment directly from plaintiff.
4. Each side shall pay its own costs.
 S/_____________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_____________ J. HOWARD BUNN, JR. CHAIRMAN
S/_____________ LAURA K. MAVRETIC COMMISSIONER